IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-38-FL

| | |
|---|---|
| DELTACOM, INC., and BUSINESS TELECOM, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| BUDGET TELECOM, INC., | ) ) ORDER |
| Defendant, | ) ) |
| and | ) ) |
| GLOBAL SYSTEMS TELECOM, INC., | ) ) |
| Intervenor. | ) ) |

This matter is before the court upon plaintiffs' motion for judgment on the pleadings as to certain of the counterclaims asserted by defendant (DE # 27). Defendant timely responded in opposition and plaintiffs replied. In this posture, the issues raised are ripe for review. For the following reasons, the court grants plaintiffs' motion.

## STATEMENT OF THE CASE

Plaintiffs commenced the instant action in Wake County Superior Court on December 31, 2009. Plaintiffs seek compensatory damages arising from an alleged breach of contract and a declaration under N.C. Gen. Stat. § 1-253 that plaintiffs properly terminated said contract ("the Partner Agreement") and have no obligation to continue paying commission payments to defendant. Defendant removed the action to this court pursuant to 28 U.S.C. §§ 1332 and 1441(a).

In its answer, filed February 3, 2010, defendant denies plaintiffs' allegations and raises a number of affirmative defenses. It also asserts various counterclaims against plaintiffs, including breach of contract for failing to pay commission payments under the Partner Agreement, breach of implied covenant of good faith and dealing, violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, negligence, unjust enrichment, breach of fiduciary duty, *quantum meruit*, and constructive fraud. Defendant seeks compensatory damages as well as declaratory relief under 28 U.S.C. § 2201, punitive damages under N.C. Gen. Stat. § 1D-15, and attorneys' fees under N.C. Gen. Stat. § 1D-45. Plaintiffs timely answered the counterclaims, denying defendant's allegations and raising affirmative defenses.

Plaintiffs' motion now before the court, filed October 15, 2010, is directed against seven of the ten counterclaims asserted by defendant.[1] Specifically, plaintiffs seek to dismiss defendant's claims for: (1) unfair and deceptive trade practices; (2) negligence, (3) unjust enrichment; (4) breach of fiduciary duty; (5) *quantum meruit*; (6) punitive damages; and (7) constructive fraud. Plaintiffs argue that this case is contractual in nature, and that defendant's counterclaims are an attempt to recast the dispute as one arising in tort. Defendant, opposing plaintiffs' motion, contends that plaintiffs' willful and deceitful wrongdoings are actionable as torts.

## STATEMENT OF FACTS

The facts alleged in the pleadings, in the light most favorable to defendant, are as follows. Plaintiffs provide telecommunications and technology services to businesses and other communications providers. Plaintiffs regularly contract with dealers to secure new customers for

---

[1] Also on October 15, 2010, plaintiffs moved for judgment on the pleadings as to all of the claims asserted by intervenor Global Systems Telecom, Inc ("GST"). GST has since amended its complaint, and plaintiffs have renewed their motion to dismiss. That motion will be addressed by the court in separate order once ripe.

their services. On July 23, 2001, the parties executed the Partner Agreement, in which defendant agreed to use its best efforts to secure customers for plaintiffs in return for commission payments. The Partner Agreement was non-exclusive; it allowed defendant to sell the services of other carriers and allowed plaintiffs to sell through other sales agents.

From the outset of the parties' relationship, defendant's marketing and sales activities under the Partner Agreement were handled by intervenor Global Systems Telecom, Inc. ("GST"). Defendant and GST regularly served as sales agents for and sold telecommunications services provided by other carriers. Plaintiffs did not object to these sales activities, and defendant and GST were among plaintiffs' best sales agents. But in part because of problems with the quality, availability, and price competitiveness of plaintiffs' products, sales of plaintiffs' products have decreased while sales of other carriers have increased.

On July 13, 2009, plaintiffs presented a new agreement to defendant that contained a materially less favorable commission structure. When defendant informed plaintiffs that it was not interested in this new agreement, plaintiffs warned they would "find something" on which to terminate the relationship and stop paying commission payments. Plaintiffs nevertheless agreed to take another look at the new agreement, but never presented any new agreement prior to sending a termination letter to defendant on December 11, 2009. Defendant contends, on information and belief, that plaintiffs made similar threats of termination to other agents and refused to pay commission to those agents.

Defendant received commission payments on a timely basis through November 2009 (*i.e.*, for revenues received in October 2009). No further commission payments were received. Additionally, in the months prior to termination, plaintiffs encouraged defendants to sign customers

3

to new terms to lock them into plaintiffs' service, while at the same time planning to stop paying commissions on these revenues. Plaintiffs also engaged in communications with the subagents of defendant and GST urging those subagents to conduct business through other master agents or to deal directly with plaintiffs. In support of this effort, plaintiffs made defamatory statements about defendant, such as that defendant had failed to meet its sales volume commitments under the Partner Agreement, and that the agreement was going to be terminated such that defendant would be unable to pay commissions due and owing to the subagents.

## DISCUSSION

A.  Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is assessed under the same standard that applies to a Rule 12(b)(6) motion. Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). In evaluating plaintiffs', the court looks to whether the pleadings contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, the court accepts all well-pled facts as true and construes these facts in the light most favorable to the claimant.[2] Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). But the court does not consider legal

---

[2] Plaintiffs ask the court to consider the Partner Agreement in its consideration of the instant motion. Because a copy of the Partner Agreement is attached to plaintiffs' original complaint as Exhibit A, it is part of plaintiffs' pleading. See Fed. R. Civ. P. 10(c). The court may consider documents attached to the complaint as well as those attached to a Rule 12 motion as long as they are integral to the complaint and authentic. Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Defendant's answer and counterclaims refer to the Partner Agreement and do not deny that Exhibit A is the Partner Agreement. Thus, defendant is considered to have admitted that Exhibit A is the Partner Agreement. See Fed. R. Civ. P.8(b)(6). Accordingly, the court will consider the Partner Agreement without converting the motion into one for summary judgment.

conclusions, elements of a cause of action, bare assertions devoid of further factual enhancement, nor will it accept unwarranted inferences and unreasonable conclusions. Id.

B.  Analysis

As mentioned, the thrust of plaintiffs' argument in support of their motion for judgment on the pleadings is that defendant is improperly trying to turn a straightforward contract dispute into a tort action. Defendant objects to this characterization, arguing that plaintiffs' willful and deceitful conduct goes beyond mere breach of the Partner Agreement. Before addressing each of the seven claims on which judgment is sought, it is necessary to briefly touch on the distinction between contract and tort that lies at the heart of plaintiffs' motion.

Two Fourth Circuit cases guide the court's analysis. In Strum v. Exxon Co., U.S.A., 15 F.3d 327 (4th Cir. 1994), the Fourth Circuit addressed "an attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim." Id. at 329. The court began by noting that contract law is more restrictive than tort law in awarding damages, and that an "attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice." Id. at 329-30. The court went on to explain that

> tort and contract law serve different goals. Tort law emerges from duties individuals owe generally to other members of society; it is faultbased and seeks both to compensate the victim and punish the wrongdoer. Accordingly, punitive awards may be appropriate where the requisite standards of culpability under state law have been met. Contract law, by contrast, arises out of the attempt by private individuals to order relationships among themselves. When such relationships collapse, the law has long recognized that compensating the individual only for actual loss will suffice.
>
> The distinction between tort and contract possesses more than mere theoretical significance. Parties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so. Punitive

5

> damages, because they depend heavily on an individual jury's perception of the degree of fault involved, are necessarily uncertain. Their availability would turn every potential contractual relationship into a riskier proposition.

Id. at 330 (internal citations omitted).

After explaining the differing rationales behind contract and tort law, the Fourth Circuit concluded that "[o]nly where a breach of contract also constitutes 'an independent tort' may tort actions be pursued." Id. It noted that the independent tort exception had been "carefully circumscribed" by North Carolina law, such that the independent tort must be identifiable and must have some aggravating element such as malice or recklessness before any punitive damages may be recovered. Id. (citing Newton v. Standard Fire Ins. Co., 291 N.C. 105, 229 S.E.2d 297 (1976)).

The Fourth Circuit further explored the contract/tort distinction in Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998). The court reiterated its direction to the district courts to "limit [a party's] tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim, as North Carolina law requires." Id. at 346. The court noted, for example, that the plaintiff's fraud and gross negligence claims arose out of defendant's performance of the contract, not out of distinct circumstances necessary to allege a truly independent tort. Id. at 346-47. The court further noted that under North Carolina law, a claim under the UDTPA (which it described as "a boilerplate claim in most every complaint based on a commercial or consumer transaction in North Carolina") may not be based on a breach of contract absent "substantial aggravating circumstances." See id. at 347.

Before turning to consideration of the claims at issue here, the court will repeat the Fourth Circuit's observation in Broussard that it believed "should guide [a] district court's consideration of [a party's] tort claims" in an action arising out of a contractual relationship:

> "We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." If [a party] has failed to fulfill its contractual obligations, the remedy is contract damages, not the blank check afforded to juries when they are authorized to return a punitive award.

Id. (quoting Strum, 15 F.3d at 333).

1. Unfair and Deceptive Trade Practices

The UDTPA prohibits "[u]nfair methods of competition . . . and unfair deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Its primary purpose is "to protect the consuming public" by providing "a private cause of action to consumers aggrieved by unfair or deceptive business practices." Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 519 (4th Cir. 1999). Unfair trade practices involving businesses are actionable where they affect the consumer as well, but only when the businesses are competitors or are engaged in commercial dealings with each other. Id. at 519-20.

A claim under the UDTPA, which allows for recovery of treble damages, see N.C. Gen. Stat. § 75-16, is precisely the kind of "boilerplate" tort claim that the Fourth Circuit has cautioned is inappropriate to allow to piggyback on a breach of contract action. See Broussard, 155 F.3d at 347. As previously mentioned, a claim is stated only if it is based upon "substantial aggravating circumstances." Id.; see also Dalton v. Camp, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (requiring "some type of egregious or aggravating circumstances" to allege a UDTPA claim). "[D]eception either in the formation of the contract or the circumstances of the breach" can be the "'substantial aggravating circumstances' that would justify [an] extraordinary treble damages recovery." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

7

Plaintiffs' threats to terminate the Partner Agreement, their efforts to encourage defendant to continue to perform while themselves planning to breach, and their refusal to otherwise meet their obligations under the Partner Agreement do not suffice to remove this action from the exclusive realm of contract law. However unscrupulous this conduct might appear, the allegations involve only the parties' understanding of and performance under the contract. See, e.g., PCS Phosphate Co., Inc. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009) (holding that a railroad's threats to abandon line going to mine was not "substantial aggravating circumstances" because they involved a dispute over obligations under the contract between the parties); Canady v. Crestar Mortg. Corp., 109 F.3d 969, 975 (4th Cir. 1997) (noting that even an intentional breach is not sufficient for liability to attach under the UDTPA). Even the allegations relating to plaintiffs' contacts with defendant's subagents, where plaintiffs supposedly informed these subagents that defendant was not meeting its requirements under the contract and would be terminated, implicate no more than plaintiffs' understanding of defendant's alleged breach, as set forth in their own pleadings. See, e.g., PCS Phosphate Co., 559 F.3d at 224.

Because defendant has shown no independent, substantial aggravating circumstances, its UDTPA claim may not proceed. See Broussard, 155 F.3d at 346-47; Strum, 15 F.3d at 329-30; Bartolomeo, 889 F.2d at 535. The court therefore need not address plaintiffs' alternative argument that the UDTPA does not apply because it did not detrimentally affect the marketplace. Plaintiffs' motion for judgment on the pleadings as to this claim is GRANTED.

2. Negligence

Under North Carolina law, a party may assert a negligence claim by alleging that an individual owing that party a legal duty breached that duty, proximately causing damage. See

8

Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). But as with a claim under the UDTPA, a negligence claim is precluded where the parties' duties to one another are a matter of contract. See, e.g., Strum, 15 F.3d at 332-33 (holding that a gross negligence claim is improper where the negligence "arises out of [a party's] performance on the contract, not out of the type of distinct circumstances necessary to allege an independent tort"). Such is the case here: Defendant alleges that plaintiffs had a duty to provide services in a manner "consistent with the terms of the Partner Agreement" (Counterclaim ¶ 49), and the injuries it alleges stem from the failure of plaintiffs to meet their obligations under the contract.

Defendant's negligence claim does not arise out of circumstances independent of the contractual performance of the parties. Accordingly, under Broussard and Strum, plaintiffs' motion for judgment on the pleadings as to that claim must be and is GRANTED.

3. Unjust Enrichment, *Quantum Meruit*

Unjust enrichment and *quantum meruit* are equitable remedies based upon a quasi contract, or a contract implied in law. Ron Medlin Const. v. Harris, 704 S.E.2d 486, 489 (N.C. 2010). "If there is a contract between the parties the contract governs the claim and the law will not imply a contract." Booe v. Shadrick 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Thus, the existence of an express contract precludes recovery in *quantum meruit* and for unjust enrichment. Paul L. Whitfield, P.A. v. Gilchrist, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment."); Booe, 322 N.C. at 570, 369 S.E.2d at 556.

Conceding that the existence of an express contract, such as the Partner Agreement here, precludes claims in *quantum meruit* and for unjust enrichment, defendant argues the Federal Rules

9

of Civil Procedure as well as the North Carolina Rules of Civil Procedure entitle parties to plead alternative forms of relief. See Fed. R. Civ. P. 8(d)(2); N.C. Gen. Stat. § 1A-1, Rule 8(a)(2). But defendant did not explicitly plead in *quantum meruit* and unjust enrichment in the alternative. (See Counterclaim ¶¶ 53-56, 62-66.) The claims incorporate by reference all of the allegations of the rest of the answer (including those alleging the existence of an express contract), and are not explicitly pleaded "in the alternative." Indeed, defendant first expressed its intent to plead these claims in the alternative in its response in opposition to plaintiffs' motion for judgment on the pleadings.

Assuming that this failure to denominate the *quantum meruit* and unjust enrichment claims as alternative pleadings does not doom the claims, the failure to include any factual allegations supporting such "alternative" claims does.[3] See, e.g., Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F.Supp.2d 436, 446 (M.D.N.C. 2005) ("[B]ecause all of the facts pleaded by [counterclaimant] allege there is an express contract between the parties, [it] cannot now claim the existence of an implied contract."). Defendant acknowledges that the Partner Agreement was executed between the parties, does not deny the existence or validity of the Partner Agreement, and repeatedly cites to the provisions of the agreement in its allegations. Indeed, as noted, the *quantum meruit* and unjust enrichment claims expressly incorporate these allegations by reference. There is no plausible inference raised by any hypothetical or alternative allegations of a quasi contract or contract implied in fact. Accordingly, plaintiffs' motion for judgment on the pleadings as to defendant's unjust enrichment and *quantum meruit* claims is GRANTED.

---

[3] The Seventh Circuit, in Holman v. Indiana, 211 F.3d 399, 407 (7th Cir. 2000), stated that "[w]hile [parties] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." There is no Fourth Circuit case law directly on point, however, so the court will assume without deciding that neither explicit nor implicit invocation of Rule 8(d)(2) is unnecessary.

10

4.  Breach of Fiduciary Duty

Defendant's breach of fiduciary duty counterclaim is yet another claim where the court must be wary of the blurring of contract and tort. As the Fourth Circuit noted in Broussard, "parties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the [Uniform Commercial Code]." 155 F.3d at 347 (quoting Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992)). The court noted that North Carolina law does not even impose a fiduciary duty between mutually interdependent businesses, such as a manufacturer and the exclusive distributor of its products, absent some showing of superiority and influence that has developed as a result. Id. at 347-48 (citing Tin Originals, Inc. v. Colonial Tin Works, Inc., 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990)).

The allegations of the complaint and the plain language of the Partner Agreement do not show any fiduciary relationship. The contractual relationship between the parties resembles the franchisor-franchisee relationship rejected as supporting any fiduciary duty in Broussard. There, as here, the smaller companies were "independent, sophisticated, if sometimes small, business[es] who dealt with [the large company] at arms' length and pursued their own business interests." Id. at 348. As the Fourth Circuit noted in that case, a fiduciary relationship is not created because one party is David and the other Goliath; it is "[o]nly when one party figuratively holds all the cards" that the "special circumstances of a fiduciary relationship has arise." Id. Such facts are not present here.

As the Fourth Circuit noted in a later case, "the domination and influence requirements are relevant only in situations when there is no legal relationship that imposes fiduciary duties on the parties to it." S. Atl. Ltd. P'ship of Tenn. v. Riese, 284 F.3d 518, 533 (4th Cir. 2002). Here,

11

defendant alleges a principal-agent relationship between the parties, which provides for reciprocal fiduciary duties. See Vail v. Vail, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951). However, according to the contract and defendant's own allegations, defendant was "a non-exclusive independent contractor with limited authority to promote and sell [plaintiffs'] services." (Compl. Ex. A ¶ 6.0.) The Partner Agreement provided for commission payments for these sales, but also expressly provided that defendant "shall not incur any obligation or indebtedness expressed or implied on behalf of [plaintiffs]." (Id.)

"Ordinarily an independent contractor cannot be an agent." Holcomb v. Colonial Assocs., LLC, 358 N.C. 501, 509, 597 S.E.2d 710, 716 (2004). An independent contractor may be an agent only when there is a significant degree of control exercised by the one who hired him. See id. The allegations set forth in the counterclaim, and the language of the contract itself, do not support an inference that plaintiffs exercised the required degree of control over defendant's actions. At best, defendant alleges that plaintiffs controlled the terms on which their products could be sold by defendant, who was also free to sell other companies products. Those are not the kind of allegations that will support a finding of a principal-agent relationship.

In short, there is no showing of a principal-agent relationship, and "North Carolina is reluctant to impose 'extra-contractual fiduciary obligations' in the context of general commercial contracts" such as the one at issue here. See S. Atl. Ltd. P'ship of Tenn., 284 F.3d at 533. No deviation from those principles is warranted where the allegations do not support an inference that plaintiffs "thoroughly dominate[d]" the arms-length business relationship between the parties. See id. Plaintiffs' motion for judgment on the pleadings as to this claim is GRANTED.

5. Constructive Fraud

To maintain a claim for constructive fraud, defendant must show that it was in a relation of trust of and confidence which led to and surrounded the consummation of the transaction in which plaintiffs are alleged to have taken advantage of their position of trust to hurt defendant. Rhodes v. Jones, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). Constructive fraud is different from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981). Implicit in the requirement that a party take advantage of his position is "the notion that the [party] must seek his own advantage in the transaction; that is, the [party] must seek to benefit himself." Barger v. McCoy Hillard & Parks, 346 N.C. 650, 667, 488 S.E.2d 215, 224 (1997).[4]

Defendant has not pleaded facts sufficient to raise a plausible inference that plaintiffs were in a position of "trust and confidence" or that they used their position to the detriment of defendant in order to benefit themselves. As this court has already noted, the allegations do no more than suggest that the parties were businesses dealing with one another at arms' length. They were not in a confidential or fiduciary relationship. Moreover, defendant's allegation that "[plaintiffs] sought to benefit themselves in all such transactions" (Counterclaim ¶ 79) is a conclusory statement that does not actually identify any benefit to plaintiffs. See Nemet Chevrolet, Ltd., 591 F.3d at 255 (directing the court to ignore conclusory allegations and restatements of the elements of a cause of action). Defendant's claim rests on plaintiffs' alleged encouragement to defendant's subagents to

---

[4] In pleading a constructive fraud claim, less particularity is required than when pleading actual fraud. Terry, 302 N.C. at 85, 273 S.E.2d at 678-79.

13

use different master agents or to conduct business with plaintiffs directly. But defendant has not indicated how plaintiffs benefit by eliminating defendant from the tiered relationship.

Regardless of the principles of Broussard and Strum, defendant has failed to allege a constructive fraud claim. Accordingly, plaintiffs' motion for judgment on the pleadings as to defendant's constructive fraud claim is GRANTED.

6. Punitive Damages

Plaintiffs argue that defendant's punitive damages claim must be dismissed because punitive damages are not available for breach of contract in North Carolina with the exception of breach of contract to marry. See Stanback v. Stanback, 297 N.C. 181, 196, 254 S.E.2d 611, 621 (1979). Because this contract does not involve a promise to marry, and where the tort claims which would have supported punitive damages have now been dismissed, plaintiffs' motion for judgment on the pleadings as to defendant's claim for punitive damages is GRANTED.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for judgment on the pleadings (DE # 27) is GRANTED. Defendant's counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and for declaratory relief remain pending.

SO ORDERED, this the 20th day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge